**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION**

|  |  |  |
|---|---|---|
| SHELBY K. MAYO, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. |
| | : | 2:12-CV-00164-RWS |
| NATIONSBANC INSURANCE | : | |
| COMPANY, INC. and GENERAL | : | |
| FIDELITY LIFE INSURANCE | : | |
| COMPANY, | : | |
| | : | |
| Defendants. | : | |

**<u>ORDER</u>**

This case comes before the Court on Defendant General Fidelity Life

Insurance Co.'s ("Defendant" or "General Fidelity")[1] Motion to Dismiss [3].

After reviewing the record, the Court enters the following Order.

---

[1] Defendant represents that NationsBanc Insurance Company, Inc. ("NationsBanc") "is not a viable entity and was not a viable entity when Plaintiff filed her claim as it merged into [General Fidelity] on September 29, 2006." (Def.'s Mot. to Dismiss, Dkt. [3] at 1 n.1.) Defendant moves to dismiss on behalf of itself and as successor in interest to NationsBanc. (Id.)

AO 72A
(Rev.8/82)

## Background[2]

This is a breach of contract action arising out of Plaintiff's purchase of a Monthly Premium Decreasing Net Balance Term Life Policy (the "Insurance Agreement" or "Agreement") from NationsBanc, predecessor in interest to Defendant.  (See generally Am. Compl., Dkt. [1-3].)  Plaintiff and her spouse, Henry G. Mayo, entered into the Agreement on or around May 15, 2001.  (Am. Compl., Dkt. [1-3] ¶¶ 2, 5; Am. Compl., Ex. A (the Agreement), Dkt. [1-1] at 5 of 6.)  Plaintiff alleges that the Agreement provided "term life insurance coverage in the amount of $150,000."  (Am. Compl., Dkt. [1-3] ¶ 2.)  After the death of Plaintiff's spouse on December 16, 2007, Plaintiff submitted a timely claim under the Agreement.  (Id. ¶ 3.)  Plaintiff alleges that "Defendant tendered payment to Bank of America, N.A." but "failed to pay the sum payable to the Plaintiff in excess of the sum necessary to pay off the loan with [Bank of America]."  (Id. ¶ 5.)  Plaintiff thus filed the instant suit for breach of contract, alleging that Defendant "failed to pay the insurance proceeds to the Plaintiff as a consequence of the death of [Plaintiff's spouse]."  (Id. ¶ 6.)

---

[2] Because the case is before the Court on a motion to dismiss, the Court accepts as true the facts alleged in the Amended Complaint.  Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1273 n.1 (11th Cir. 1999).

2

Defendant now moves to dismiss the Complaint for failure to state a claim upon which relief may be granted, pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6).  Defendant argues that Plaintiff's breach of contract claim fails because the Agreement was one simply for the insurance of Plaintiff's debt to Bank of America; thus, Defendant argues, its only obligation under the Agreement was to pay off that debt, which obligation Defendant discharged.  (Def.'s Mot. to Dismiss, Dkt. [3] at 3-4.)  In response, Plaintiff argues that the Agreement reasonably may be read as an Agreement for $150,000 of life insurance, not simply for the insurance of Plaintiff's debt; thus, Plaintiff argues, the Agreement is ambiguous, precluding the Court from ruling as a matter of law that Defendant discharged its contractual obligations by paying off Plaintiff's debt.  (See generally Pl.'s Resp. to Mot. to Dismiss ("Pl.'s Resp."), Dkt. [4].)  The Court sets out the legal standard governing a Rule 12(b)(6) motion to dismiss before considering Defendant's motion on the merits.

## Discussion

## I.     Legal Standard

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain a

"short and plain statement of the claim showing that the pleader is entitled to relief."  While this pleading standard does not require "detailed factual allegations," "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  In order to withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Id. (quoting Twombly, 550 U.S. at 570).  A complaint is plausible on its face when the plaintiff pleads factual content necessary for the court to draw the reasonable inference that the defendant is liable for the conduct alleged.  Id.

At the motion to dismiss stage, "all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff."  Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1273 n.1 (11th Cir. 1999).  However, the same does not apply to legal conclusions set forth in the complaint.  Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1260 (11th Cir. 2009) (citing Iqbal, 556 U.S. at 678).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Iqbal, 556 U.S. at 678.  Furthermore, the court does not "accept as

true a legal conclusion couched as a factual allegation." <u>Twombly</u>, 550 U.S. at 555.

## II.    Analysis

As stated in the Background section, <u>supra</u>, Defendant moves to dismiss Plaintiff's claim for breach of contract, arguing that under the Agreement, Defendant's only obligation was to pay off Plaintiff's loan with Bank of America, which obligation Defendant discharged.  (Def.'s Mot. to Dismiss, Dkt. [3] at 3-5.)  Defendant argues that contrary to Plaintiff's allegations, Defendant was not required to pay any additional amount to Plaintiff once it satisfied this obligation.  (<u>Id.</u>)  In support of this argument, Defendant points to the following provisions of the Agreement:

> <u>WHAT WE WILL PAY</u>:        Immediately upon satisfactory proof of loss acceptable to us, **we will pay the amount of the insured debt to the creditor as beneficiary, but not more than the amount necessary to completely pay off your debt**. . . .
>
> <u>INSURED DEBT</u>: Means the LEAST of:
>    1.    The outstanding balance of your debt on the date of your death;
>    2.    The MAXIMUM AMOUNT OF INSURANCE as shown in the SCHEDULE.

(<u>Id.</u> at 3-4 (citing Agreement, Dkt. [1-1] at 6 of 6) (emphasis in bold added).)

5

Defendant argues that under the plain language of the foregoing provisions, Defendant fully performed its obligations under the Agreement when it paid off Plaintiff's loan with Bank of America.

Plaintiff contends, on the contrary, that the terms of the Agreement are ambiguous and therefore should be interpreted in accordance with Plaintiff's reading thereof.  (<u>See generally</u> Pl.'s Resp., Dkt. [4].)  Plaintiff argues that the Agreement was not simply an agreement for insurance of a debt, but one for term life insurance in the amount of $150,000.  (<u>Id.</u>)  In support of this argument, Plaintiff points out the following:

> The [A]greement states on the first page that the Amount of Life Insurance Term is $150,000.  To the layperson, this clearly implies that they have bought $150,000 worth of term life insurance.  If, as Defendant argues, the sole purpose of the [A]greement is to secure a debt, then why put a number on the document that reflects a payout of $150,000?

(<u>Id.</u> at 2.)  In further support of Plaintiff's argument, Plaintiff, like Defendant, points to the "WHAT WE WILL PAY" provision of the Agreement, quoted partially above:

> <u>WHAT WE WILL PAY</u>:       Immediately upon satisfactory proof of loss acceptable to us, we will pay the amount of the insured debt to the creditor as beneficiary, but not more than the amount necessary to completely pay off your debt. . . .  **If the**

6

> **insured debt exceeds the balance of your debt the excess will be
> paid by separate draft or check of the Insurer to the Second
> Beneficiary as named in the SCHEDULE or, if none, your
> estate.**

(Id. at 2 (bold emphasis added).)

"Insurance in Georgia is a matter of contract and the parties to the contract of insurance are bound by its plain and unambiguous terms." Hurst v. Grange Mut. Cas. Co., 470 S.E.2d 649, 663 (Ga. 1966) (citation omitted). "However, if a provision of an insurance contract is susceptible of two or more constructions, even when the multiple constructions are all logical or reasonable, it is ambiguous . . . and the statutory rules of contract construction will be applied." Id. (citation omitted).  When a provision of an insurance contract is ambiguous, three well known rules of contract construction apply:

> any ambiguities in the contract are strictly construed against the
> insurer as drafter of the document; any exclusion from coverage
> sought to be invoked by the insurer is likewise strictly construed;
> and the insurance contract is to be read in accordance with the
> reasonable expectations of the insured where possible.

Fireman's Fund Ins. Co. v. University of Georgia Athletic Ass'n, Inc., 654 S.E.2d 207, 209-10 (Ga. Ct. App. 2007).

7

The Court agrees with Plaintiff in this case that the terms of the Agreement are ambiguous.  While the Agreement may be read, as Defendant urges, as an agreement to insure a debt, it likewise may be read as a term life insurance policy in the amount of $150,000.  The Court reaches this conclusion in light of the following.  First, the Agreement contains a provision stating the "Amount of Life Insurance Term" to be $150,000.  (Agreement, Dkt. [1-1] at 5 of 6.)  Second, the "WHAT WE WILL PAY" provision states, "If the insured debt exceeds the balance of your debt the excess will be paid by separate draft or check of the Insurer to the Second Beneficiary as named in the SCHEDULE or, if none, your estate."  (Id. at 6 of 6.)  As Plaintiff argues, a reasonable insured could believe, based on these provisions, that she had purchased a policy of life insurance in the amount of $150,000—not simply insurance to cover a particular debt.

The Court has considered Defendant's arguments that the foregoing provisions do not give rise to an ambiguity.  Defendant argues that the $150,000 "Amount of Life Insurance Term" does not create an ambiguity because the provision is defined as the "Maximum[ ] for Each Insured Debt."  (Reply in Supp. of Mot. to Dismiss ("Def.'s Reply"), Dkt. [6] at 4 (citing the Agreement,

8

Dkt. [1-1] at 5 of 6).)  This, however, does not eliminate the ambiguity.  As

Plaintiff argues, if the Agreement was simply to insure a debt of a specific

amount, a reasonable insured would expect the maximum amount of insurance

coverage to be, simply, the amount of the debt.  Thus, the Agreement

reasonably may be read as providing for life insurance coverage in the amount

of $150,000.

Defendant also disputes Plaintiff's contention that the "WHAT WE

WILL PAY" provision creates an ambiguity.  Defendant explains that the

language cited by Plaintiff was included in the Agreement "to balance out any

transactions that occur after the insurance trigger date—i.e., the date of

death—and before submission of a proof of loss."  (Def.'s Mot. to Dismiss,

Dkt. [3] at 4.)  Defendant explains, "In other words, since the [Agreement]

defines the Insured Debt as the balance of the Plaintiff's loan on the date of

death, a mechanism is in place to reimburse Plaintiff for any payments made on

her debt after the date of death."  (Id. at 4-5.)  Although this is a logical

explanation of the provision, it does not spring clearly and indisputably from

the face of the Agreement itself.  On the contrary, the Court finds that a

reasonable insured could read this provision, in combination with the $150,000

9

"Amount of Life Insurance Term," to mean that once the insured debt was paid off, the difference between the debt and the $150,000 would be paid to the second beneficiary or insured's estate.

In sum, the Court agrees with Plaintiff that the Agreement is subject to more than one reasonable interpretation and therefore is ambiguous. Accordingly, as stated above, the Court must construe the Agreement strictly against the insurer and in accordance with the reasonable expectations of the insured.  Defendant's Motion to Dismiss [3] therefore is **DENIED**.

## Conclusion

In accordance with the foregoing, Defendant's Motion to Dismiss [3] is **DENIED**.

**SO ORDERED**, this  _21st_  day of March, 2013.


_____
RICHARD W. STORY
UNITED STATES DISTRICT JUDGE

10